

**FILED**

JAN 0 7 2019

Clerk, U S  District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| LIONEL SCOTT ELLISON, | Cause No. CV 17-168-BLG-DLC-TJC |
| Petitioner, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATION OF UITED STATES MAGISTRATE JUDGE |
| MICHAEL FLETCHER, | |
| Respondent. | |

This case comes before the Court on Petitioner Lionel Scott Ellison's application for writ of habeas corpus under 28 U.S.C. § 2254.  Ellison is a state prisoner proceeding pro se.

## I.   28 U.S.C. §2254 Petition

As explained herein, Ellison's petition is untimely, and he has not provided a sufficient basis to excuse his late filing.  Accordingly, his petition should be dismissed with prejudice.

### A. Procedural History

Ellison challenges a conviction for Arson in the Thirteenth Judicial District,

1

Yellowstone County, on May 26, 2009.[1]  The charge arose after a car belonging to Ellison's ex-girlfriend caught fire and burned.

Ellison initially entered an *Alford* plea; his subsequent attempt to withdraw the plea was denied by the district court.  Ellison was ultimately sentenced to five years in the Montana State Prison, with all of the time suspended.  See, *State v. Ellison*, 2009 MT 408N, Or. at 3 (Mont. Nov. 25, 2009).[2]

Ellison timely filed a direct appeal.  The only issue presented was whether the trial court erred when it denied Ellison's motion to withdraw his *Alford* plea. The Montana Supreme Court affirmed the trial court's denial of Ellison's motion to withdraw, finding no misrepresentations had been made to Ellison, and that his plea was entered knowingly and voluntarily.  *Id.* at 3-4.

On February 23, 2011, Ellison filed a petition for postconviction relief (PCR) in the state district court.  His main contention was that the value of the vehicle burned was less than $1,000, and was thus insufficient to establish the requisite statutory elements for arson.[3]  Based upon this premise, Ellison argued:

_____

[1] Ellison has another active habeas petition pending before this Court in which he is challenging a 2015 Yellowstone County judgement of conviction.  See, *Ellison v. Guyer*, CV-18-176-BLG-SPW-TJC, Pet. (filed Dec. 19, 2018).

[2] Montana Supreme Court orders and briefing available at: https://appecm.mt.gov/ (accessed November 13, 2019).

[3] Mont. Code Ann. § 45-6-103(1)(a) provided "[a] person commits the offense of arson when, by means of fire or explosives, the person knowingly or purposely. . .

(1) the trial court erred by accepting his plea on an insufficient factual basis; (2) Ellison's first attorney, Mr. Michael, provided ineffective assistance of counsel by allowing him to enter a plea on a charge with an insufficient factual basis; and, (3) his second attorney, Mr. Watson, provided ineffective assistance of counsel for failing to challenge the sufficiency of the factual basis for the charge on direct appeal.  On March 18, 2013, the district court entered an order dismissing Ellison's PCR petition.  See generally, *Ellison v. State*, DV-11-306, Or. (March 15, 2013) (dismissing Ellison's PCR petition).[4]

The district court first determined that Ellison's argument relative to the value of the vehicle was without merit.  The court held the vehicle's value was irrelevant, because under the plain and unambiguous language of the statute, vehicles were specifically excluded from the $1,000 threshold applying to personal property.  *Id.* at 4-5.  Accordingly, any claim Ellison sought to advance regarding either Michael's or Watson's alleged ineffective assistance for failing to challenge the sufficiency of the evidence relative to the vehicle's value was unavailing.  *Id.* at

---

damages or destroys a structure, vehicle, personal property (other than a vehicle) that exceeds $1,000 in value . . . that is property of another without consent."

[4] A court may take judicial notice of orders and filings in state courts when directly related to the case at issue. *Tigueros v. Adams*, 658 F. 3d 983, 987 (9th Cir. 2011). For purposes of clarity, the Clerk of Court will be directed to file a copy of this order into the record.

6-8.

Ellison timely filed a direct appeal.  On December 20, 2013, the Montana Supreme Court affirmed the denial of Ellison's PCR petition.  See, *Ellison v. State*, 2013 MT 376, 373 Mont. 159, 315 P. 3d 950.  The Supreme Court agreed with the district court's finding that vehicles are excluded from the threshold amount of $1,000 applicable to property crimes.  *Ellison*, 2013 MT at ¶ 13.  Because the value of the vehicle was immaterial, the court agreed it would have been wholly frivolous for Ellison's attorneys to challenge the charge on that basis.  Thus, neither Michael or Watson performed deficiently or provided Ellison ineffective assistance.  *Id*. at ¶ 18.

Ellison next argued Michael performed deficiently by failing to obtain an expert analysis of a surveillance video of the burning vehicle prior to his change of plea hearing, or object to the video during the State's offer of proof.  Ellison also contended Watson performed deficiently in not raising the issue on appeal.  In support of his argument, Ellison relied upon an expert report obtained in support of his PCR petition.  The court noted the report:

> states that the surveillance video showed fire and smoke coming from an unidentified vehicle, followed by the appearance of 'one and two or even three barely visible' unidentifiable individuals in the vicinity of the fire.  The report notes, 'it is truly impossible to determine anything even remotely associated with actions taken or intent.'

*Id*. at ¶ 20.

4

Michael submitted an affidavit in the PCR proceedings in which he swore that he reviewed the video and explained to Ellison that its contents were damaging to Ellison because it was inconsistent with Ellison's story. *Id.* at ¶¶ 4, 21. Michael also advised Ellison he believed the State had enough evidence to convict Ellison at trial. *Id.* at ¶ 4.[5] The court found that under these circumstances "[t]he fact that an expert witness later would conclude that the video was not reliable does nothing to establish that Michael's representation fell below an objectively reasonable standard." *Id.* at ¶ 21. The court further pointed out that the fact that the expert found the video unreliable confirmed the reasonableness of Michael's decision not to retain a video expert. *Id.*

For the same reasons, the court also found that Watson's decision not to raise the video issue on appeal was objectively reasonable. *Id.* at 22. Watson explained in his affidavit he believed Ellison had waived his challenge to the sufficiency of the evidence and instead elected to pursue what he believed to be a stronger argument – the voluntariness of Ellison's plea – on direct appeal. *Id.* at ¶ 22. The court determined Ellison failed to present any evidence to overcome the presumption that Watson's representation was effective. *Id.*

---

[5] Apparently, the State also possessed evidence that Ellison offered to pay a potential witness to tell the same story as Ellison regarding the fire. Michael believed entering an *Alford* plea to the arson charge would ensure the State would not charge Ellison with witness tampering and, accordingly, that a negotiated resolution was in Ellison's best interest. See, *Ellison v. State*, 2013 MT 376 at ¶ 4.

**Ellison's Claims**

In his current petition, Ellison alleges: (1) he is actually innocent of arson due to insufficient evidence and the state's failure to meet the elements of the offense (Doc. 1 at 13-16); (2) trial counsel provided ineffective assistance of counsel by engaging in professional misconduct, abandoning Ellison, and engaging in fraudulent acts and omissions, *id.* at 17-23; (3) the state courts violated Ellison's Fourteenth Amendment right to Due Process by failing to allow him to withdraw his wrongfully induced *Alford* plea, *id.* at 24-26; and, (4) the state courts erred in their interpretation of Mont. Code Ann. §45-6-103, and by failing to acknowledge the expert video analysis in violation of Ellison's Fourteenth Amendment right to Due Process. *Id.* at 27-29.

Ellison filed his petition with this Court on November 7, 2017. *Id.* at 30; *see also Houston v. Lack*, 487 U.S. 266, 276 (1988)(pro se prisoner's petition is deemed filed on date prisoner delivers it to prison authorities for mailing to clerk of court).

**C.     Federal Statute of Limitations Analysis**

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), a one-year limitations period applies to petitions filed by state prisoners under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244. As explained in this Court's previous order, even with the benefit of statutory tolling, Ellison would have had to

6

file his federal habeas petition on or before Monday, December 23, 2013, for his petition to be timely.  See, (Doc. 5 at 4-5.)  Ellison did not file his petition until November of 2017, nearly four years too late.

· Ellison does not dispute the Court's calculation of the filing deadline. Rather, he asserts: (i) he should be entitled to equitable tolling to excuse the untimely filing, and/or (ii) he is actually innocent of the underlying offense of arson; thus, the miscarriage of justice exception should apply.  See, (Doc. 6 at 1-4.)

### i.    Equitable Tolling

AEDPA's statute of limitations is subject to equitable tolling.  *Holland v. Florida*, 560 U.S. 631, 645 (2010).  But equitable tolling is available only "if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time."  *Roy v. Lampert*, 465 F. 3d 964, 969 (9th Cir. 2006); *Gibbs v. Legrand*, 767 F. 3d 879, 888 n. 8 (9th Cir. 2014).  A petitioner must show (i) that he has been pursuing his rights diligently and (ii) some extraordinary circumstances stood in his way.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Waldron-Ramsey v. Pacholke*, 556 F. 3d 1008, 1011 (9th Cir. 2009).

The standard for equitable tolling of AEDPA's one-year limitations period is a very high bar and is reserved for rare cases.  *Miranda v. Castro*, 292 F. 3d 1063, 1066 (9th Cir. 2002) ("Indeed, the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.") (citations

omitted).  It is the petitioner's burden to establish that equitable tolling is

warranted.  *Pace*, 544 U.S. at 418; *Rasberry v. Garcia*, 448 F. 3d 1150, 1153 (9th

Cir. 2006).  A petitioner must show that the "extraordinary circumstances" were

the "but-for and proximate cause of his untimeliness." *Ramirez v. Yates*, 571 F. 3d

993, 997 (9th Cir. 2009).

In support of his equitable tolling argument, Ellison relies, in part, on his

alleged abduction in 2010.  On July 20, 2010, Ellison was found in a field near

Livingston, Montana with his hands and legs bound and a bag over his head.

Ellison told authorities he had been abducted and tortured by two individuals.[6]

Following an investigation, authorities believed Ellison had staged the events, and

he was charged in December of 2010 with tampering with evidence;.[7]  During the

course of the Park County case, Ellison was evaluated by mental health

professionals at the Montana State Hospital.[8]  During the course of his evaluation,

Ellison advised professionals that he believed the perpetrators of this abduction

---

[6] See e.g., Forensic Medical Report (Doc. 25-1 at 22-35.)

[7] See, Affidavit in Support of Motion for Order Granting Leave to File
Information, *State v. Ellison*, DC-10-114 (filed December 20, 2010).  The Clerk of
Court will be directed to file a copy of this affidavit into the record.

[8] Ellison filed a copy of this Evaluation in his companion habeas case.  See, *Ellison
v. Guyer*, CV-18-176-BLG-SPW-TJC, May 23, 2012 Evaluation (Doc. 2-1 at 65-
72.)

were "persons likely in the employ of a company he and his family [were] suing."[9]
Ellison's abduction theory has since evolved; he now contends Yellowstone
County Detective Frank Fritz ordered his abduction, as a result of an affair Fritz
was having with Ellison's ex-wife, Rhonda May Quarters.  See, (Doc. 25 at 9.)
Apparently, Ellison believes Detective Fritz wanted to "rid" himself of Ellison's
competition for Quarters' affections.  *Id.* at 10.[10]

Ultimately, on May 29, 2013, the Park County Attorney made a motion, in
the interests of justice, to dismiss the Tampering case against Ellison.[11]  That same
day, the matter was dismissed.[12]

Ellison asserts that this purported abduction and torture in July of 2010, in
conjunction with his alleged wrongful imprisonment/conviction in a 2015 case in

---

[9] *Ellison v. Guyer*, CV-18-176-BLG-SPW-TJC (Doc. 2-1 at 69.)

[10] See also, Ellison's Reply Brief to the Montana Supreme Court, attached as an
exhibit to his Supplement (Doc. 25), in which he alleges Detective Fritz was not
only having an affair with his ex-wife, but also ordered Ellison's abduction, rape,
and torture. See, (Doc. 25-1 at 9.)  Ellison goes on to claim that Fritz then
attempted to frame Ellison for the arson of Ellison's parents' home, apparently in
retaliation for a civil suit the Ellison family had filed against Detective Fritz and
Yellowstone County officials. *Id.* at 17.  See also, (Doc. 27 at 8-9) (Ellison's
explanation of his theory outlining Fritz's involvement in both arson matters and
now placing Fritz at the abduction scene).

[11] See, Motion to Dismiss, *State v. Ellison*, DC-10-114 (filed May 29, 2013).  The
Clerk of Court will be directed to file a copy of this motion into the record.

[12] See, Order of Dismissal, *State v. Ellison*, DC-10-114 (filed May 29, 2013).  The
Clerk of Court will be directed to file a copy of this order into the record.

Yellowstone County, constitute extraordinary circumstances.  See, (Doc. 6 at 2-3.)
Ellison also seems to indicate that he had difficulty finding an attorney to represent
him in federal habeas proceedings.  *Id.* at 3.

Ellison's arguments are unavailing.  Ellison's 2015 Yellowstone County
charges plainly do no afford him an avenue for relief; those charges transpired after
his federal filing date had already passed.

Ellison's alleged 2010 abduction similarly does not provide grounds for
relief.  As set forth above, following his alleged 2010 abduction incident, Ellison
was able to pursue a direct appeal of his arson conviction to the Montana Supreme
Court.  He was also able to pursue postconviction relief in the district court, and an
appeal therefrom to the Montana Supreme Court.

Moreover, during the application federal limitations period, Ellison was
also involved in other Yellowstone County matters, including *State v. Ellison*,
Cause No. DV 12-724.  Ellison was represented in the underlying justice court
Partner/Family Member Assault case by Penelope Strong in 2010.  Following his
conviction in justice court, Ellison appealed his conviction to the district court; his
conviction was affirmed.  Ellison then represented himself on appeal to the
Montana Supreme Court. See, *State v. Ellison*, DA 11-0149, Appellant's Br. (filed
July 5, 2011); see also, *State v. Ellison*, 2012 MT 50, Or. (Mont. March 6,
2012)(affirming district court's denial of justice court PFMA appeal).  Ellison then

10

filed a petition for PCR relief and was represented by new counsel, Elizabeth Honaker.  Following a denial of his PCR petition in district court, Honaker represented Ellison on appeal.  The Montana Supreme Court affirmed the denial of the petition. *Ellison v. State*, 2015 MT 16N (Mon. Jan. 20, 2015).

Therefore, during the federal limitations period Ellison was able to navigate the judicial system and file pleadings in various state court proceedings, both with and without the assistance of counsel; he had access to legal resources; and he demonstrated he was capable of analyzing and presenting legal arguments. Accordingly, Ellison has not established the events that occurred in 2010 were "extraordinary circumstances" or constituted the but-for cause of his failure to timely file in this Court.  See, *Ramirez*, 571 F. 3d at 997.

Because Ellison has not met his burden of showing extraordinary circumstances prevented him from timely filing, it is not necessary to address the diligence element of equitable tolling.  See, *Rasberry*, 448 F. 3d at 1153.  Ellison is not entitled to equitable tolling.

### ii.    Actual Innocence Gateway/Miscarriage of Justice Exception

In *McQuiggin v. Perkins*, 133 S. Ct. 1924-1931-34 (2013) the Supreme Court recognized an equitable exception to AEDPA's statute of limitations.  The Court held the "actual innocence gateway" to federal habeas review that was applied to procedural bars in *Schlup v. Delo*, 513 U.S. 298, 327 (1995), and *House*

11

*v. Bell*, 547 U.S. 518 (2006), extends to petitions that are time-barred under AEDPA.  The "actual innocence gateway" is also referred to as the "Schlup gateway" or the "miscarriage of justice exception."

Under *Schlup*, a petitioner seeking federal habeas review under the miscarriage of justice exception must establish his factual innocence of the crime, not a mere legal insufficiency.  See, *Bousley v. United States*, 523 U.S. 614, 623 (1998); *United States v. Ratigan*, 351 F. 3d 957, 965 (9th Cir. 2003).  To make a credible claim of actual innocence, a petitioner must produce "*new* reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  *Schlup*, 513 U.S. at 324 (emphasis added); see also, *Lee v. Lampert*, 653 F. 3d 929, 945 (9th Cir. 2011); *McQuiggin*, 133 S. Ct. at 1927.  A petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence," *Schlup*, 513 U.S. 298, 327, or that "every juror would have voted to acquit him."  *Lee*, 653 F. 3d at 946 (citing *Schlup*, 513 U.S. at 327).  Because of "the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected."  *Calderon v. Thomas*, 523 U.S. 538, 559 (1998).

Ellison asserts that the evidence presented in support of his petition establishes that no crime was committed.  But none of the evidence presented by

Ellison is "newly discovered." Thus the equitable exception to the limitations period is inapplicable.

For example, Ellison argues the affidavit of Debbie Harris supports his claim of actual innocence. See, (Doc. 6 at 2); see also, (Doc. 1-1 at 14-16). But Harris supplied the affidavit on June 16, 2008. Additionally, the affidavit itself provides no firsthand knowledge or a reliable eyewitness account of the incident underlying the arson charge. Harris acknowledges she was told of the incident leading to the arson charge after the fact. See e.g., (Doc. 1-1 at 15.)[13] The Court fails to see how this information supports a claim of actual innocence or the corresponding application of the miscarriage of justice exception.

Likewise the video analysis and report provided by Douglas McShane is not newly discovered. As set forth above, this information was filed with the state district court in support of Ellison's PCR petition on February 22, 2011. See, (Doc. 1-1 at 1-2.) This same information was also considered by the Montana Supreme Court on direct appeal from the denial of the PCR petition. See, *Ellison v. State*, 2013 MT 376 at ¶¶ 20-22. The Supreme Court observed, "[e]ven though [McShane's] report clearly states that the surveillance video is unreliable due to its quality, Ellison nonetheless relies on the video to corroborate [his] version of

---

[13] Harris affirmed that on May 20, 2007, she "went to a friend's home to play poker" and "was told there by a friend that Lionel was in the hospital due to a car fire."

13

events." *Id.* at ¶ 20. Ellison argued to the state courts that this information

supported his theory of legal insufficiency; the Montana Supreme Court was not

persuaded. Nevertheless, even assuming, *arguendo*, that this information could

somehow demonstrate a legal insufficiency, it does not establish that Ellison is

factually innocent of arson. Thus, the information is inadequate under *Bousley*.

523 U.S. at 623.

Finally, Ellison again argues the appraisal value of the burned car was $500,

and that the state courts erred in their respective interpretations of the Montana

arson statute. See, (Doc. 6 at 2); see also, (Doc. 1-1 at 13, 17-19). Again, this

information and argument is not new. Moreover, the Montana Supreme Court

addressed Ellison's contention that the district court misinterpreted the arson

statute and erroneously excluded vehicles from the $1,000 statutory threshold

applicable to personal property. The court found the district court properly

concluded that "vehicles are clearly not included in the category of personal

property, plainly evidenced by the phrase 'other than a vehicle.'" *Ellison v. State*,

2013 MT at ¶ 13. The Court held the statute was plain on its face and that

Ellison's argument was meritless. *Id.*

To the extent Ellison requests that this Court review the Montana Supreme

Court's interpretation of state law, such review is improper. A state court's

interpretation of state law, including one announced on direct review, is binding

14

upon a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546, US 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

In short, the report from McShane, the affidavit from Harris, the vehicle appraisal, and Ellison's interpretation of Montana's arson statute do not constitute "new reliable evidence" required to invoke the *Schlup* gateway, much less meet the demanding showing of actual innocence. Ellison is unable to demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 298. The equitable exception of *Schlup* does not apply.

### iii.   Conclusion

Because Ellison has failed to demonstrate he is entitled to equitable tolling or demonstrate actual innocence to allow him to pass through the *Schlup* gateway, his petition is time-barred without excuse and should be dismissed with prejudice.

### II.   Motion for a Show Cause Evidentiary Hearing

Ellison moves the Court for a show cause evidentiary hearing based upon "lack of probable cause, broken chain of custody, [and] lack of jurisdiction." (Doc. 26.) Read broadly, the Court believes Ellison desires an opportunity to demonstrate his actual innocence and the attendant application of the *Schlup* gateway/miscarriage of justice exception. See, *Id.* at 2.

15

Evidentiary hearings in § 2254 cases are governed by AEDPA, which "substantially restricts the district court's discretion to grant an evidentiary hearing." *Baja v. Ducharme*, 187 F. 3d 1075, 1077 (9th Cir. 1999). "[W]hen considering an actual innocence claim in the context of a request for an evidentiary hearing, the District Court need not 'test the new evidence by a standard appropriate for deciding a motion for summary judgment,' but rather may 'consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence.'" *House*, 547 U.S. at 537 (quoting *Schlup*, 513 U.S. at 331-32). Generally, a habeas petitioner should receive an evidentiary hearing when he makes a "good-faith allegation that would, if true, entitle him to equitable tolling." *Roy*, 465 F. 3d at 969; see also, *Sibley v. Culliver*, 377 F. 3d 1196, 1206 (11th Cir. 2004) ("The petitioner must make a threshold showing of actual innocence to warrant a hearing.") Where the issues raised by the petitioner can be resolved by reference to the state court record, no evidentiary hearing is required. *Cullen v. Pinholster*, 563 U.S. 170, 183 (2011).

As explained above, Ellison has not demonstrated actual innocence or that he is entitled to pass through the *Schlup* gateway. Accordingly, he is neither entitled to an evidentiary hearing, nor is one necessary. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (if record refutes petitioner's factual allegations or otherwise precludes relief, an evidentiary hearing is not required); *Gandarela v. Johnson*, 286

16

F. 3d 1080, 1087 (9th Cir. 2002) (evidentiary hearing properly denied where petitioner "failed to show what more an evidentiary hearing might reveal of material import"), cert. denied, 537 U.S. 1117 (2003).  Because an evidentiary hearing would serve no useful purpose at this juncture, Ellison's motion for hearing (Doc. 26) will be denied.

### III.   Motion for Joinder

As set forth above, Ellison currently has two habeas petitions pending before this Court: the present matter challenging his 2009 Yellowstone County arson conviction, and *Ellison v. Guyer,* No. CV-18-176, in which he challenges a 2015 Yellowstone County judgment of conviction.  In his motion for joinder, Ellison seeks to join the two matters based upon what he perceives as a continuous course of bad conduct and acts on the part of various Yellowstone County officials, including the Yellowstone County Attorney's Office, the Thirteenth Judicial District Court, and the Yellowstone Sheriff's Office, among others.  See generally, (Doc. 27.)

As set forth above, because Ellison's petition in the present matter is time-barred without excuse, he has no further avenue available to challenge the 2009 state court judgment in federal habeas.  This Court cannot ignore the statutory bar, and Ellison cannot escape his untimeliness by seeking joinder.  If appropriate, Ellison may seek to present facts or evidence from the 2009 judgment and

17

underlying proceedings that he believes may be relevant to his pending habeas proceedings in Cause No. CV-18-176. The determination of the relevance and admissibility of any such evidence will be made in the course of that proceeding. But Ellison will not be allowed to bootstrap the untimely claims against the 2009 state court judgment to those advanced in his more recent petition. Ellison's motion for joinder (Doc. 27) will be denied.

## IV.   Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

A certificate of appealability should be denied because Ellison has not established an adequate basis to excuse the untimely filing of his petition. There are no close questions and there is no basis to encourage further proceedings at this time.

Based on the foregoing, the Court enters the following:

## ORDER

1. The Clerk of Court is directed to file a copy of the state district court's March 15, 2013, order denying Ellison's PCR petition in *Ellison v. State*, DV-11-306, into the record in this matter.

2. The Clerk of Court is directed to file a copy of the December 20, 2010, Affidavit in Support of Motion for Order Granting Leave to File Information, filed in Montana's Sixth Judicial District, in *State v. Ellison*, DC-10-114, into the record in this matter.

3. The Clerk of Court is directed to file a copy of the May 29, 2013, Motion to Dismiss, filed in Montana's Sixth Judicial District, in *State v. Ellison*, DC-10-114, into the record in this matter.

4. The Clerk of Court is directed to file a copy of the May 29, 2013, Order of Dismissal, filed in Montana Sixth Judicial District, in *State v. Ellison*, DC-10-114, into the record in this matter.

5. Ellison's motion for a show cause hearing (Doc. 26) is DENIED.

6. Ellison's motion for joinder (Doc. 27) is DENIED.

## RECOMMENDATION

1. Mr. Ellison's Petition (Doc. 1) should be DISMISSED WITH PREJUDICE as time-barred without excuse.

2.  The Clerk of Court should be directed to enter a judgment in favor or Respondents and against Petitioner.

3.  A certificate of appealability should be DENIED.

**NOTICE OF RIGHT TO OBJECT
TO FINDINGS & RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT**

Mr. Ellison may object to this Findings and Recommendation within 14 days. 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Mr. Ellison must immediately notify the Court of any change in his mailing address.</u> Failure to do so may result in dismissal of his case without notice to him.

DATED this 7th day of January, 2020.

*/s/ Timothy J. Cavan*
Timothy J. Cavan
United States Magistrate Judge